**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |  | |
|---|---|---|---|
| MICHELLE WHITMER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | Case No. 12 CV 50115 | |
| | ) | | |
| CITIMORTGAGE, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**CITIMORTGAGE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6) AND RULE 9(b)**

**INTRODUCTION**

Plaintiff's Response ignores the essential arguments set forth in CitiMortgage's Motion to Dismiss. Plaintiff instead argues that nonconformity with HAMP is necessarily an actionable claim under the Illinois Consumer Fraud Act. But no Illinois case has ever held this. Plaintiff makes this same flawed argument to support her other claims. The Complaint fails to allege sufficient facts to support any viable claim against CitiMortgage.

First, Plaintiff's claims are not based on a contractual relationship, such as a Trial Period Plan ("TPP") Agreement, with CitiMortgage—they are all premised on CitiMortgage's alleged violations of HAMP. As the Seventh Circuit and courts across the country have held, borrowers like Plaintiff do not have standing to bring private causes of action for violations of HAMP. Second, even if Plaintiff's claims do not depend on HAMP (which they do), they also fail because the Complaint contains insufficient facts to establish the elements of such claims. For these reasons, and those set forth below, Plaintiff's Complaint should be dismissed under Rule 12(b)(6) and Rule 9(b).

**ARGUMENT**

**I.     Unlike *Wigod*, Plaintiff Does Not Allege Actionable HAMP-Related Claims**

The Seventh Circuit has allowed certain state law claims to proceed in a HAMP-related context. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). But *Wigod* is distinguishable from Plaintiff's case for several reasons. As noted by the Seventh Circuit, there are essentially three categories of HAMP-related claims: (1) suits claiming direct violations of HAMP, which are universally dismissed because HAMP creates no private right of action; (2) claims alleging rights as third-party beneficiaries of a servicer's agreement with the United States, which are also properly dismissed; and (3) claims based directly on TPP Agreements, *some of which* have been upheld based on direct privity between plaintiff borrowers and their loan servicers. *Id.* at 559 n.4. The plaintiff in *Wigod* fit into the third category.

In *Wigod*, the plaintiff's claims stemmed from Wells Fargo's alleged breach of a TPP Agreement. There, the plaintiff signed her TPP Agreement and Wells Fargo returned to her an executed copy. *Id.* at 558-559. The plaintiff timely made all payments, yet Wells Fargo did not offer her a permanent modification. *Id.* In explaining why Wigod's consumer fraud claim was ***not*** preempted, the Seventh Circuit noted that she did "not allege that Wells Fargo engaged in unfair or deceptive business practices ***by violating HAMP guidelines***," but rather rooted her case in Wells Fargo's implementation of its promises in the TPP. *Id.* at 585 (emphasis added).

Yet, as noted in CitiMortgage's Motion and unlike the plaintiff in *Wigod*, that is precisely how Plaintiff has styled her Complaint: by repeatedly claiming CitiMortgage violated HAMP. *See* Complaint at ¶ 114 ("Defendant intentionally violated, and completely disregarded, numerous HAMP violations . . ."), ¶ 116 (violation of HAMP Handbook § 9.5), ¶ 118 (CitiMortgage's "malicious deviations from HAMP" and its "disregard for its duties, obligations,

or responsibilities under the Making Homes Affordable Act"). *See also* CitiMortgage's Motion to Dismiss (the "Motion") at 10. These allegations do not constitute valid claims and Counts I through V should be dismissed.

In her Response, Plaintiff does not dispute that once all TPP requirements were met, CitiMortgage permanently modified her mortgage. *See* Complaint at ¶ 82. The allegations and exhibits to the Complaint demonstrate that prior to the "Fourth Modification" attempt, Plaintiff had not met all of the HAMP requirements, such as making payments on time and providing CitiMortgage with all appropriate paperwork. *See e.g.* Motion at 5-6; Complaint at ¶¶ 26, 60, 70-72, 77, 82, Exs. N, H; HAMP Supplement Directive 10-01. This means that Plaintiff cannot allege any claims based on TPPs before the "Fourth Modification," since she was not in compliance with the conditions precedent and she has alleged no valid claim concerning this last modification. *See* Complaint at ¶ 82; Response at 12 (fourth modification "is currently being executed"). In stark contrast, in *Wigod*, the court permitted the plaintiff's claims to go forward where she alleged she completed all necessary steps, and *per the executed TPP Agreement*, her lender refused to permanently modify her loan. *Wigod,* 673 F.3d at 558-559. *Wigod* therefore fit into the "third category" of HAMP claims, as hers were rooted in the TPP Agreement itself.

Simply put, Plaintiff's claims do not fall within this "third category" of permissible HAMP-related claims—she does not allege (or attach) a mutually-executed TPP Agreement, and unlike *Wigod*, the facts alleged show that, once all requirements were met, she *did* receive a permanent modification. Complaint at ¶ 82. *See e.g. Soin v. Fed. Nat'l Mortg.* Ass'n, 2012 WL 1232324, at *5 (E.D. Cal. Apr. 12, 2012) (distinguishing applicability of *Wigod* where the plaintiff did not have a mutually-executed TPP and was merely invited to be considered for modification). Plaintiff has failed to plead actionable HAMP-related claims.

Plaintiff's Response underscores the strained attempt to "fit" her inadequately pled claims into an actionable HAMP category of claims. In her brief, she states that CitiMortgage "deviat[ed] from the HAMP standards" and makes repeated reference to the "standard of conduct" to which CitiMortgage allegedly should have acted, citing case law that discusses negligence actions. *See* Plaintiff's Memorandum in Response to Defendant's 12(b)(6) Motion to Dismiss (the "Response") at 3-4. As the cases cited by Plaintiff demonstrate, standard of conduct is a negligence concept. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'r. & Mfg.*, 545 U.S. 308, 315 (2005). Negligence concepts provide no support for Plaintiff's claims for intentional torts and statutory consumer fraud. Plaintiff's discussion of CitiMortgage's alleged "deviation" from a standard of care emphasizes that, in essence, her Complaint is, in fact, an attempt to "vindicat[e] Defendant's violation of HAMP . . . [and] supervise Defendant's compliance with HAMP." *See* Response at 1. As *Wigod* made clear, these are not viable HAMP claims. *See Wigod*, 673 F.3d at 559 n.4; *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 308 (D. Mass. 2010); *Nash v. GMAC Mortg., LLC,* 2011 WL 2470645, at *7-9 (D. R.I. May 18, 2011).

## II. Plaintiff Fails To Meet the Heightened Pleading Standard Necessary to Allege Violations of Illinois' Consumer Fraud Act

Plaintiff has failed to plead sufficient facts to state a claim under the Illinois Consumer Fraud Act. Among the insufficient allegations in Plaintiff's brief is the conclusory assertion that CitiMortgage "*steer[ed] Plaintiff away* from paying off her mortgage" – yet this is contradicted by Plaintiff's Complaint, which alleges only that a CitiMortgage representative "offered to modify Plaintiff's loan." *Compare* Response at 6 *with* Complaint at ¶ 37. Plaintiff also argues that she "executed three TPP contracts," attempting to make her consumer fraud claim similar to the plaintiff in *Wigod*. Response at 7. Yet if Plaintiff had three TPP agreements governing her

relationship with CitiMortgage, they were not attached to her Complaint nor sufficiently set forth in its allegations. *See supra* at 3. Plaintiff fails to allege an enforceable TPP Agreement with facts setting forth that borrower and servicer signed the agreement(s), submitted paperwork requested, a determination of eligibility was made, and payments were made pursuant to said Agreement. *See* Motion at 4-5; Complaint at ¶¶ 38-49, 55-71, 82. These pleading deficiencies cannot be remedied by the most liberal of inferences. *See Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust, Series 2003-1,* 787 F. Supp. 2d 747, 751 (N.D. Ill. 2011) (quoting *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009)).

Plaintiff also does not adequately allege CitiMortgage engaged in **deceptive** conduct in accordance with the heightened pleading requirement of Rule 9(b). *See* Response at 6; *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (plaintiff bears the burden "of pleading plausible grounds" to suspect a fraudulent scheme). Conclusory assertions like "deceptive," "fraudulent," or claiming CitiMortgage "misrepresented" facts—without more—fail to meet this higher pleading standard. *Robb v. Capital Acquisitions & Mgmt. Co.*, 2002 WL 31654941, at *6 (N.D. Ill. Nov. 21, 2002) (citing *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 501 (1997)). *See also Elson v. State Farm Fire & Cas. Co*, 295 Ill. App. 3d 1, 14 (1st Dist. 1998) ("Merely characterizing the action as unlawful or wrongful is insufficient to allege a violation of the [Consumer Fraud] Act."). Though arguing that CitiMortgage acted wrongfully, Plaintiff concludes, without citation to authority, that certain HAMP requirements did not apply to her. *See e.g.,* Complaint at ¶¶ 72, 111. CitiMortgage cannot decipher from such conclusions the alleged specific, actionable misrepresentations or deceptive statements it purportedly made. *See id.* at ¶¶ 37, 45, 55, 79, 89, 90, 92-93, 95, 101-122; Response at 6.

Not only is it unclear what allegedly deceptive or fraudulent statements CitiMortgage purportedly made, Plaintiff also fails to allege facts showing that CitiMortgage made any statements with any ***intent*** that Plaintiff rely on its ***deception***. In *Stern v. Norwest Mortg., Inc.*, 179 Ill.2d 160, 169 (1997), the Illinois Supreme Court affirmed the dismissal of claims under the Consumer Fraud Act, despite finding the defendant violated Illinois' Escrow Act, because the "defendant did not conceal, suppress, or omit any material fact *with the intent that plaintiffs would rely on such action* . . . [but] merely made an honest mistake concerning the interpretation of a statute that had yet to be construed" (emphasis added). *See also Skyline Intern. Dev. v. Citibank, F.S.B.*, 302 Ill. App. 3d 79, 85 (1st Dist. 1998) (noting the Consumer Fraud Act does not apply to every wrong affecting a consumer and is not intended to make liable misstatements made with belief of accuracy). Here, Plaintiff alleges no facts showing CitiMortgage acted with any intent that Plaintiff rely on its allegedly deceptive statements. At best, Plaintiff alleges that CitiMortgage attempted to correct any errors and get her on a path to modify her mortgage. *See* Complaint at ¶¶ 64, 67-68, 91. Such is not the stuff of consumer fraud claims. Instead, Plaintiff's Complaint states numerous alleged *violations of HAMP*, which cannot be fashioned into a claim under the Illinois Consumer Fraud Act, and should accordingly be dismissed. *See Wigod*, 673 F.3d at 585.

### III. Plaintiff Fails to Plead Sufficient Facts to Support a Claim for Intentional Infliction of Emotional Distress

Plaintiff fails to provide any serious support for her intentional infliction of emotional distress claim. Plaintiff does not cite any HAMP cases finding a viable claim for intentional infliction of emotional distress, nor could CitiMortgage locate any. As in *McBride v. American Home Mortgage Servicing Inc.*, 2012 WL 931247, at *5 (D. Mass. Mar. 19, 2012), Plaintiff does not plead facts to infer that CitiMortgage "intended" to cause her emotional distress. Plaintiff

does not claim CitiMortgage representatives used inappropriate language, threatened or harassed her, or engaged in any other "outrageous" conduct. *See Graham v. Commonwealth Edison Co.,* 318 Ill. App. 3d 736, 745 (1st Dist. 2000). And as noted in *McBride,* although circumstances surrounding home foreclosure are "likely fraught with unique emotions and angst . . . even ones that may involve improper conduct, do not readily 'go beyond all possible bounds of decency'" to merit a claim for intentional infliction of emotional distress. *McBride,* 2012 WL 931247, at *5.

Plaintiff alleges no facts to fairly infer that CitiMortgage "refused" to process her payments, or that its alleged failure to click the accept button was a purposeful "refus[al]." *Compare* Response at 8 *with* Complaint at ¶¶ 49, 45, 55. These characterizations are insufficient to state a viable claim. *See e.g., Ramos v. Bank of America, N.A.*, 2012 WL 1999867, at *7 (D. Md. June 4, 2012) (dismissing claim for intentional infliction of emotional distress arising out of HAMP action and noting it is difficult to "imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct.") (emphasis original).

In *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1, 3 (7th Cir. 1972), cited by Plaintiff, the court discussed the "new tort" of intentional infliction of emotional distress. The court held the plaintiff could state such a claim where she met all conditions of her life insurance policy, but, rather than paying, her insurer instead tried to coerce her into a settlement. *Id.* at 3-5. The court noted that outrageous conduct, such as using "extreme 'bullying tactics' and other 'high pressure' methods . . . seeking to force compromises or settlements may constitute outrageous conduct." *Id.* at 4. This Complaint has no such allegations. There are no allegations that CitiMortgage coerced Plaintiff into modifying her mortgage. Plaintiff pleads only that

CitiMortgage "offered" to modify her loan. Complaint at ¶ 37. There are no allegations that CitiMortgage "bullied" or made any threats to Plaintiff in connection with her mortgage. *See id.* at ¶ 125.

Plaintiff's reliance on *Graham v. Commonwealth Edison Co.* is also unavailing. *Graham* held that the plaintiff could state such a claim in connection with his retaliatory discharge case where his former employer allegedly retaliated against his whistleblowing by conducting a fake investigation and defaming his character. 318 Ill. App. 3d at 748. The court emphasized that, in assessing whether a defendant's conduct is "outrageous," it is important to consider "whether the defendant reasonably believed that his objective was legitimate." *Id.* at 745-746. Here, the Complaint indicates CitiMortgage continued to work with Plaintiff. *See e.g.* Complaint at ¶¶ 64, 67-68, 91. *Graham* is therefore distinguishable from this case.

For these reasons, Count II of Plaintiff's Complaint should also be dismissed under Rule 12(b)(6).

### IV. Plaintiff's "Claims" That CitiMortgage Allegedly Intentionally Interfered With Any Property or Expectancy Interests Are Legally Insufficient

*Tortious Interference with Property*

Plaintiff's attempts to explain her claim for tortious interference with a protected property interest, while creative, are unavailing to fashion such a claim because (1) none of the cases she cites discuss this as a viable cause of action in Illinois; and (2) even if such a claim exists, using the elements suggested by Plaintiff, there are no sufficient factual allegations evidencing each.

Plaintiff devotes two and a half pages to explaining intentional interference with a property interest, yet the cases cited do not support this cause of action in Illinois on the allegations in this Complaint. *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill. App. 3d 339, 342 (5th Dist. 1975), *rev'd on other grounds*, 64 Ill.2d 338

(1976), considered whether a court could award punitive damages in an action alleging wrongful denial of health benefits. The court cited a California decision, *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal. App. 3d 376 (4th Dist. 1970), where the court said a bad faith refusal to pay under an insurance policy constituted a tortious interference with a protected property interest. *Ledingham*, 29 Ill. App. 3d at 345-346. The *Ledingham* court did not discuss the viability of such a cause of action in Illinois, the elements necessary to state such a claim, or indicate it extended beyond the insurance context.[1] *See also Marilyn Jo Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187 (1978) (discussing whether plaintiff could recover punitive damages for retaliatory discharge); *Urfer v. Country Mut. Ins. Co.,* 60 Ill. App. 3d 469 (4th Dist. 1978) (analyzing suit against insurer under disability policy).

Even adopting Plaintiff's claimed construction of this cause of action, her Complaint alleges no facts to plausibly infer that CitiMortgage "(1) threaten[ed] or [made] bad faith refusals to fulfill its obligations under a *contract*[2] <u>and</u> (2) maliciously employed false and threatening communications"[3] to get Plaintiff to relinquish her mortgage or home. The Complaint is devoid of any facts to set forth such allegedly intentional, malicious conduct to CitiMortgage.

To the extent Plaintiff now claims CitiMortgage allegedly breached a duty of good faith and fair dealing, she still fails to state a claim. In *Voyles v. Sandia Mortgage Co.*, 196 Ill.2d 288, 298 (2001), the Illinois Supreme Court declined to expand a "limited cause of action" for breach of the duty of good faith and fair dealing beyond an insurer breaching its duty to settle. Today,

---

[1] The *Ledingham* court did, however, find that punitive damages were inappropriate as additional recovery in an action also claiming intentional infliction of emotional distress. 29 Ill. App. 3d at 346.

[2] *See generally, supra* at 3 and Motion at 4-5, discussing Plaintiff's lack of enforceable TPP Agreements.

[3] Plaintiff makes a conclusory assertion that CitiMortgage allegedly sent her "false and threatening communications to extort certified funds" and initiated foreclosure proceedings. Complaint at ¶ 147. It is unclear however, based on the facts in the Complaint, what communications were allegedly made that can plausibly be construed as "false" or "threatening." Further, as stated in CitiMortgage's Motion at 5 n. 4, HAMP directives state that foreclosure *sales* should be suspended during a TPP, but do not preclude initiating foreclosure suits.

Illinois courts still do not recognize such a cause of action. *See Iowa Physicians' Clinic Med. Foundation v. Physicians Ins. Co of Wisconsin*, 547 F.3d 810, 812 (7th Cir. 2008) (an insured's duty to settle in good faith is a limited exception to Illinois' general refusal to recognize an independent tort arising from breach of the covenant of good faith and fair dealing). For these reasons, Plaintiff does not, and cannot, state a viable claim for breach of a protected property interest in Count III.

### *Intentional Interference with Business Expectancy*

As noted in CitiMortgage's Motion, Plaintiff has no reasonable expectation of receiving a permanent modification unless and until all contractual prerequisites were met. *See* Motion at 13; Complaint, Ex. 1 at Group Exhibit H, Ex. N; HAMP Supplemental Directive 09-01, April 6, 2009, at 15; HAMP Supplemental Directive 10-01, January 28, 2010, at 1. In her Response, Plaintiff does not credibly dispute that she met these preconditions consistent with HAMP guidelines. Response at 13-14.

Fundamentally, this claim—like all of Plaintiff's intentional tort claims—inevitably fails for its absence of facts showing CitiMortgage intentionally took any action to disrupt Plaintiff's loan modification process. In *Voyles*, the Court also found this element lacking in the plaintiff's claim. 196 Ill.2d at 297. The plaintiff claimed intentional interference with a business expectancy due to her mortgage lender's sending allegedly false credit reports. *Id.* The Court noted that the defendant's repeated efforts to assist the plaintiff if she brought her account current did not support the inference that the plaintiff's lender "set out to 'force plaintiff into foreclosure.'" *Id.* Similarly, in this case, Plaintiff's Complaint acknowledges that CitiMortgage representatives made efforts to rectify any roadblocks to her modification and instruct Plaintiff how to get her modification on track. *See e.g.* Complaint at ¶ 64, 67-68. This does not support

Plaintiff's claim that CitiMortgage allegedly intentionally thwarted Plaintiff's modification efforts. Accordingly, Count IV should also be dismissed.

**V.  Punitive Damages Are A Requested Remedy, Not an Independent Cause of Action, and Plaintiff's Complaint Fails to Support Such Retributive Relief**

CitiMortgage reiterates that "'a prayer for punitive damages is not, itself, a cause of action,' but rather is 'a type of remedy.'" *Clifton v. I-Flow Corp.*, 2011 WL 5077615, at *4 (N.D. Ill. Oct. 26, 2011) (citing *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill.2d 495 (2011). *Petty v. Chrysler*, 343 Ill. App. 3d 815 (1st Dist. 2003), cited by Plaintiff, seemingly permitted a separate count for damages, but without any discussion of the validity of punitive damages as a cause of action. Illinois law is clear that punitive damages are not a separate claim. *See also Smith v. St. James Hosp. & Health Ctrs.*, 2003 WL 174195, at *2 (N.D. Ill. Jan. 27, 2003) (dismissing separate claim for punitive damages); *McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 110 (1st Dist. 1986) (in Illinois, like most states, punitive damages "represent a type of relief rather than an independent cause of action.").

In *Clifton*, the court treated a 12(b)(6) motion to dismiss plaintiff's "count"—quotation marks in original—for punitive damages as a Rule 12(f) motion to strike the request for punitive damages. 2011 WL 5077615, at *4. If the Court is inclined to adopt Judge Feinerman's approach, Plaintiff's request for punitive damages should nonetheless be stricken. First, as discussed in many cases cited by Plaintiff, even if this Court declines CitiMortgage's Motion, punitive damages would still not be warranted because Plaintiff could receive compensatory damages sufficient to compensate her for any injury. Punitive damages "are awarded only in cases with aggravated circumstances, and "should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the underlying cause of action." *Petty*, 343 Ill. App. 3d at 828-829. *See also Eckenrode*, 470 F.2d at 5 (holding plaintiff could not

recover punitive damages for intentional infliction of emotional distress); *Ledingham*, 29 Ill. App. 3d at 346 (declining to permit punitive damages for intentional infliction of emotional distress). Here, although CitiMortgage disputes that Plaintiff stated claims in Counts I-IV, if this Court finds she did, the purported misconduct alleged is not "beyond" the conduct forming the basis of her underlying claims to warrant additional relief.

Finally, as set forth above and in CitiMortgage's Motion, Plaintiff's Complaint is devoid of facts pleading any intentional conduct—let along conduct evidencing "a high degree of moral culpability"—by CitiMortgage. *Clifton*, 2011 WL 5077615, at *4 (citing *Slovinski v. Elliot*, 237 Ill.2d 51 (2010)). In *Clifton*, for example, the court permitted a request for punitive damages where the plaintiff alleged the defendant misled the medical community and general public by knowingly distributing defective pain pumps. *Id.* at *4. Such egregious facts are simply not present here sufficient to warrant punitive relief.

## CONCLUSION

For these reasons, CitiMortgage, Inc. respectfully requests that this Court dismiss Plaintiff Michelle Whitmer's Complaint with prejudice and grant such further relief as is appropriate.

Dated: June 13, 2012

Respectfully submitted,

CITIMORTGAGE, INC.

  s/ Todd A. Rowden
Todd A. Rowden
Timothy L. Binetti
Sara A. Eber
THOMPSON COBURN LLP
55 E. Monroe St., 37th Floor
Chicago, IL 60603
312.346.7500
ARDC Nos. 6201929, 6282534, 6299707

***Attorneys for CitiMortgage, Inc.***

- 12 -

## CERTIFICATE OF SERVICE

     The undersigned attorney certifies that I caused a copy of the foregoing Notice of Motion and CitiMortgage, Inc.'s Reply Brief in Support of its Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(6) and Rule 9(b), to be served on the following counsel of record through the CM/ECF e-filing system on June 13, 2012.

    C. Nicholas Cronauer
    Rebecca F. Stephens
    Charles E. Cronauer
    Charles E. Cronauer & Associates
    1101 Dekalb Ave., Suite 2
    Sycamore, Illinois 60178

                                                  s/  Todd A. Rowden

5549698.3