Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 12 C 50115 | DATE | 12/21/2012 |
| CASE TITLE | Whitmer vs. CitiMortgage Inc. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part. The motion is granted as to the claims in Count III and Count IV and the request for punitive damages set forth in Count V. These counts are dismissed with prejudice. The motion is denied as to the claims in Count I and Count II. The court requires the parties to report to Magistrate Judge Mahoney within 30 days as to whether they wish to engage in mediation/settlement with Magistrate Judge Mahoney.

*Philip G. Reinhard*

■[ For further details see text below.]   Electronic Notices /Copy to Magistrate Judge Mahoney.

## STATEMENT - OPINION

Plaintiff, Michelle Whitmer, brought this action against defendant, CitiMortgage, Inc., in state court alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/2 (Count I), intentional infliction of emotional distress (Count II), tortious interference with a property right (Count III), tortious interference with an expectancy (Count IV) and punitive damages (Count V). Defendant removed the action to this court premised on diversity of citizenship. Plaintiff is a citizen of Illinois. Defendant is a New York corporation with its principal place of business in Missouri. The amount in controversy exceeds $75,000 when both compensatory and punitive damage claims are considered. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a). Defendant moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendant also argues that failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) is an additional basis for dismissing the ICFA claim of Count I.

For purposes of a motion to dismiss, the facts alleged in the complaint are taken as true. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 555 (7th Cir. 2012). Plaintiff's claims arise from the loan modification process she engaged in with defendant when she sought to modify her home mortgage loan under the federal Home Affordable Modification Program ("HAMP"). HAMP does not create a federal private right of action. Id. However, it does not pre-empt all state-law claims and federal law can supply the standard of care imposed by state law. See id. at 578-79.

HAMP, as relevant here, involved loan servicers offering loan modifications to certain home-mortgage borrowers to help them avoid foreclosure. It involved the servicer and borrower entering into a "trial period plan" ("TPP") and provided that "[a]fter the trial period, if the borrower complied with all terms of the TPP Agreement – including making all required payments and providing all required documentation– and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification." Id. at 557.

Plaintiff contacted defendant in December 2009 seeking the pay-off amount for her mortgage. Plaintiff's husband had died in August 2009 and plaintiff intended to pay off her mortgage with life insurance proceeds. During the conversation she had with defendant's employee about the pay-off amount, the employee offered to modify plaintiff's loan instead. Plaintiff provided financial information verbally and the employee advised her that her new payment amount would be $1,293.83, due January 1, 2010 with 2% interest for five years and that interest would never exceed 4.75%.

## STATEMENT - OPINION

Plaintiff made the January 1, 2010 payment and it cleared her bank on January 19, 2010. She contacted defendant on January 19, 2010 to advise she had yet to receive the paperwork ("Initial Package") for her modification. Defendant's employee told her the mortgage department was overwhelmed. Plaintiff later contacted defendant to make her February payment and defendant's employee asked her to authorize the next three TPP mortgage payments in advance so her modification would not be at risk due to a possible missed payment. Plaintiff gave the authorization and arranged for three payments of $1,293.83 to be deducted automatically from her checking account on the first of March, April, and May. The March payment cleared her bank on March 5, 2010. Later in March, she received a collection call for her account despite the payment having cleared. She never received the Initial Package for her first modification request.

During the week of April 11, 2010, plaintiff received statements indicating her loan was in arrears. She called defendant and was advised her loan was in foreclosure. On April 19, 2010, she received a letter from defendant stating that her automatic draft for April 2010 was returned by her bank for "unable-to-locate account number." The letter demanded payment of $19,919.74 in certified funds. There had been no problem locating plaintiff's account for the prior drafts in January, February, and March 2010.

In April 2010, plaintiff was advised by an employee of defendant that the reason she had never received the Initial Package for her first modification attempt was because the employee she had spoken to at the time had not clicked the "accept" button to acknowledge plaintiff's verbal acceptance of the terms. She was told that the only way to avert foreclosure at this point was to cure the debt. Plaintiff later made a second modification request. On April 27, 2010, plaintiff received the Initial Package for this modification request and immediately sent defendant the requested documentation. On May 3, 2010 she was advised by defendant that the second modification could not be completed before the foreclosure of her home. Plaintiff immediately sent defendant a cashier's check for $23,933.88. As of May 5, 2010, plaintiff's account was listed as "current."

By letter from defendant dated May 28, 2010, plaintiff was advised defendant had received her Initial Package information for her second modification attempt and it was being forwarded for review. On June 1, 2010, plaintiff authorized a TPP payment to defendant in the amount of $1,293.83. During June 2010 plaintiff sent defendant updated financial information per a request she had received from defendant.

In July 2010, plaintiff called defendant to arrange her TPP payment but was told defendant could not accept her payment as the terms of her modification were about to change. Plaintiff asked to make a payment in her pre-modification amount but was told it made more sense to wait until the new modification was complete so she could make the payment at a much lower rate. On August 1, 2010, plaintiff again called about making her monthly payment. She was advised there was still no new information on her modification or how much she should pay. Plaintiff made a payment of $2,150.52 which cleared on August 2, 2010. Defendant never applied this payment to plaintiff's account.

In September 2010, plaintiff was told by defendant she would begin her new TPP on October 1, 2010 and that her payment would be approximately $1,600. On September 28, 2010, plaintiff received a letter from defendant stating she was approved for a new TPP, that her first payment was due October 1, 2010, and that her payment would be $2,049.79 and last for three months. This payment amount was actually greater than, not less than, her original mortgage payment amount of $2,033.50.

Later in October 2010, plaintiff was informed that her new payment amount would be $1,613.15 and begin November 1, 2010 and that revised documents would be sent to her quickly. Plaintiff made monthly payments in this amount for the months of November and December 2010 and January, February, and March 2011. In each of these months, when she called to arrange for her payment to be made, she asked about the status of her new document package. She was told to be patient because the mortgage department was overwhelmed. In fact, the package had been sent in January and delivered to a door of plaintiff's house she did not ordinarily use. She found the package during the week of March 6, 2011 and immediately sent it in.

On March 24, 2011, plaintiff received a letter advising she was in default for failure to pay as required by the note and mortgage. The letter demanded payment of $13,423.53 in certified funds to avoid foreclosure. Plaintiff made her April 1, 2011 payment in the amount of $1,613.15 and the payment cleared her bank. Plaintiff filed an appeal to reset her loan but it was declined on April 19, 2011. Sometime in April 2011 plaintiff was advised by defendant that it had received her modification package on March 9, 2011 but that her modification attempt was closed on March 10, 2011 because "they had not received it."

On April 29, 2011, plaintiff again sent defendant the documentation she had sent previously on multiple

occasions. On May 1, 2011, plaintiff called to arrange her payment for May but defendant refused to process it. She immediately sent a cashier's check which defendant accepted but applied as her June 2011 rather than May 2011 payment. Plaintiff called the modification department and was told she needed to supply more information which she faxed on May 4, 2011.

On May 9, 2011, defendant sent plaintiff another Initial Package (her fourth modification attempt) which she returned and she was granted a permanent modification. At the time of the permanent modification, defendant did not retroactively convert plaintiff's modification to an earlier date as required by the HAMP Handbook. This would have required a refund of capital costs, fees, and other charges defendant charged plaintiff during her modification attempts. The modification that was granted resulted in a principal balance increase in plaintiff's loan to $221,354.47 from $181,765.02. Unbeknownst to plaintiff, defendant filed a foreclosure action against plaintiff on May 26, 2011. By letter dated June 7, 2011, plaintiff was advised by defendant that it was about to begin foreclosure proceedings against her even though the foreclosure had already commenced. Plaintiff learned of the foreclosure from a neighbor who called and asked her about it. The foreclosure was dismissed July 27, 2011.

Starting in August 2011, plaintiff's monthly payments were consistently misapplied to the account of someone else. This resulted in plaintiff being notified repeatedly that her payments were delinquent and her having to provide proof she had actually made the payments.

Plaintiff alleges defendant, by engaging in the foregoing, was able to increase the principal balance of plaintiff's loan by $39,589.45 in capitalized costs to be paid over thirty years. Other costs were also paid by plaintiff due to the foregoing conduct, resulting in plaintiff paying $57,300.14 in additional fees and costs in order to modify her loan. She claims defendant undertook these actions in order to either increase her loan balance or to force her into foreclosure by piling on excessive costs.

Count I alleges a violation of ICFA. ICFA provides a claim for unfair or deceptive acts or practices including "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2. The elements of a claim under ICFA are 1) a deceptive or unfair act or practice by the defendant; 2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; 3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and 4) the defendant's conduct is the proximate cause of plaintiff's injury. Wigod, 673 F.3d at 574. Claims for violation of ICFA as to fraud and deception, "are subject to the same heightened pleading standards as other fraud claims; as such they must satisfy the particularity requirement of Rule 9(b)." Greenberger v. GEICO General Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011). Claims under ICFA as to unfair conduct are not subject to the heightened pleading standard and only require conformance to Rule 8 standards. Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc., 536 F.3d 663, 670 (7th Cir. 2008).

Plaintiff presents her claims in terms of fraud and deception rather than unfair practices. To meet the Rule 9(b) standard, plaintiff must plead the who, what, when, where, and how of the fraud or deception. See AnchorBank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir 2011). The complaint must paint "a sufficiently detailed picture of the alleged scheme." Id. Plaintiff has done so.

The complaint carefully details the specific employees of defendant plaintiff spoke with, approximately when these conversations occurred and what they told her. It details, as set out above, the actions taken by defendant, and its failure to take promised actions, and how the actions and inactions worked to greatly increase the fees and costs incurred by plaintiff and how her principal balance was increased by defendant's actions and inactions. It alleges a deceptive misuse of the HAMP process to plaintiff's detriment. The complaint meets the specificity requirements of Rule 9(b) and pleads the elements of an ICFA claim set out above. Plaintiff need only state a plausible claim. Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). She need not show that proof of the alleged facts is probable. Id.

Count II asserts a claim for intentional infliction of emotional distress. Under Illinois law, the elements of a claim for intentional infliction of emotional distress are that 1) defendant engaged in "extreme and outrageous" conduct toward the plaintiff; 2) defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; 3) plaintiff endured "severe or extreme" emotional distress; and 4) defendant's conduct actually and proximately caused the emotional distress." Ulm v. Memorial Medical Center, 964 N.E.2d 632, 641 (Ill. App. 2012). A claim for intentional infliction of emotional distress is governed by Rule 8, Christensen v. County of Boone, 483 F.3d 454, 465 (7th Cir. 2007), and need only state a plausible claim that puts

defendant on notice of what the claim is and the grounds upon which it rests. Brooks, 578 F.3d at 581. Where the plaintiff's factual allegations describe the principal events giving rise to the claim, they are sufficient. Christensen, 483 F.3d 466.

Defendant argues plaintiff did not plead sufficiently specific facts showing outrageous conduct and that plaintiff has not pled facts from which it can be inferred defendant intended to cause plaintiff emotional distress. However, such specificity is not required. Id. Plaintiff has pled numerous instances of false statements by defendant, of defendant telling plaintiff to make certain payments then failing or refusing to process the payments or telling her she was in arrears after making payments as she had been told to make them, of continuing to apply her payments to someone else's account and continuing to advise her she is in arrears due to these misapplications. Plaintiff's allegations are sufficient to survive a motion to dismiss. See id.

Count III alleges defendant tortiously interfered with plaintiff's property rights. Defendant seeks to dismiss this claim arguing no such tort is recognized in Illinois. Plaintiff cites several cases to support her claim but none of them are on point. She cites Ledingham v. Blue Cross Plan for Hosp. Care, 330 N.E.2d 540 (Ill. App. 1975), rev'd on other grounds, 356 N.E.2d 75 (Ill. 1976), a case dealing with a health insurance policy. Ledingham discusses theories concerning liability for breach of a duty of good faith and fair dealing and quotes Fletcher v. Western Nat'l Life Ins. Co., 89 Cal. Rptr. 78, 93 (Cal. App. 1970) stating "'threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to the policyholder for purposes of causing him to surrender his policy or disadvantageously settle a nonexistent dispute constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered.' Punitive damages may properly be awarded in such a case." Id. at 549. Ledingham goes on to hold that punitive damages were not available on the facts of that case. Id. However, later cases have refused to follow the Ledingham/Fletcher rationale, even in insurance cases, see Martin v. Federal Life Ins. Co., 440 N.E.2d 998, 1006, n.2 (Ill. App. 1982) (collecting cases) and have declined to extend its reasoning to other types of cases.

Kelsay v. Motorola, Inc., 384 N.E.2d 353 (Ill. 1979) dealt with the tort of retaliatory discharge for filing a workers' compensation claim and the availability of punitive damages therefor. It did not deal with "tortious interference with a property right." Voyles v. Sandia Mortgage Corp., 751 N.E.2d 1126, 1132 (Ill. 2001) declined to recognize a tort action based on a breach of good faith and fair dealing theory outside the insurance duty-to-settle context. Neither Kelsay or Voyles supports plaintiff's position that a cause of action exists for tortious interference with a property right here. Count III must be dismissed.

Count IV asserts a claim for intentional interference with a prospective business advantage. She relies on Voyles which states the elements of such a cause of action are "(1) a reasonable expectancy of entering into a valid business relationship, (1) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from defendant's interference." Id. at 1132. However, a cause of action for this tort requires defendant to interfere with plaintiff's prospective business relationship with a third party not with the defendant itself. Visco Fin. Serv., Ltd.v. Siegel, No. 08 C 4029, 2008 WL 5170855, * 2 (N.D. Ill. Dec. 10, 2008) (Kocoras, J.) Here, no expectation of entering a business relationship with a third party is alleged. The allegations all go to the business relationship between plaintiff and defendant. Plaintiff has failed to state a claim for intentional interference with prospective business advantage. Count IV must be dismissed.

Count V seeks punitive damages on the Count III claim for tortious interference with a property right and the Count IV claim for intentional interference with prospective business advantage. Since both these counts are dismissed, the Count V claim for punitive damages based on them must also be dismissed.

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part. The motion is granted as to the claims in Count III and Count IV and the request for punitive damages set forth in Count V. These counts are dismissed with prejudice. The motion is denied as to the claims in Count I and Count II. The court requires the parties to report to Magistrate Judge Mahoney within 30 days as to whether they wish to engage in mediation/settlement with Magistrate Judge Mahoney.